UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSEI C.,[1] <br><br>        Petitioner, <br><br>    v. <br><br> WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al. <br><br>        Respondents. | Case No. 1:25-cv-01321-CDB (HC) <br><br> ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS <br><br> (Doc. 1) |

Pending before the Court[2] is Petitioner Aleksei C.'s pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241. For the reasons set forth below, the undersigned will deny the petition.

## I.    BACKGROUND

Petitioner is a native and citizen of Russia. (Doc. 9 at 10, 27). He "entered the United States on April 10, 2024, and applied for admission … from Mexico via the pedestrian primary lanes at

[1] Petitioner requests the Court use his initials rather than his full last name. (Doc. 1 at 2 n.1). In the underlying immigration proceedings, Petitioner filed an application for asylum and sought the protection of the Convention Against Torture. (*Id.* at ¶18). While the immigration judge denied his applications for relief from removal (Doc. 9 at 20-23), Petitioner's petition for review is pending before the Ninth Circuit Court of Appeals. *Chub v. Bondi*, No. 25-5282 (9th Cir. filed Aug. 20, 2025). In light of these considerations, the Court partially redacts Petitioner's name to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Both parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 11).

the San Ysidro Port of Entry, California." (*Id.* at 6, 11). Petitioner arrived as a CBP One applicant and did not have valid documents for legal entry into the United States. (*Id.* at 11). The same day, April 10, 2024, Petitioner requested asylum and was "turned over to the San Ysidro Admissibility Enforcement Unit office for further inspection" and "detained for further disposition." (*Id.*). Because he sought asylum, Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b). (*Id.* at 2). Petitioner later requested a hearing, and an immigration judge sustained the charge of removability pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Naturalization Act ("INA"). (*Id.* at 6).

Petitioner appeared in immigration court on June 25, 2024, and the immigration judge reset the hearing two times before Petitioner appeared in court on July 10, 2024. (*Id.*). At this hearing, Petitioner requested a continuance to seek representation, which was granted. (*Id.*). Six days later, United States Immigration and Customs Enforcement ("ICE") considered Petitioner for parole from detention after filing his asylum application. (Doc. 14 at 17-18). ICE determined that Petitioner had not established that he was not a flight risk. (*Id.*). ICE further found that a bond or other parole condition would not ensure Petitioner's appearance at required hearings. (*Id.*).

Weeks later, Petitioner and his counsel appeared in immigration court, and "the case was reset for DHS [Department of Homeland Security] preparation." (Doc. 9 at 6-7). Petitioner again appeared in court with counsel on September 12, 2024, and "the case was reset for his attorney's preparation." (*Id.* at 7).

A month later, on October 16, 2024, Petitioner appeared in immigration court with counsel and sought another continuance to allow his attorney additional time to prepare. (*Id.*). The immigration court granted his request and continued the hearing to November 21, 2024, when Petitioner and his counsel appeared again, and the case was reset by the immigration court. (*Id.*).

On December 30, 2024, Petitioner requested a bond redetermination hearing in the Adelanto Immigration Court, and the hearing was scheduled for January 8, 2025. (*Id.*). Petitioner moved to continue the bond redetermination hearing, and on January 6, 2025, the immigration judged denied the motion, concluding that it lacked jurisdiction to reconsider Petitioner's custody status and

considered the request withdrawn without prejudice. (*Id.* at 14).

The same day, Petitioner and his counsel appeared in court, and the immigration judge "set the matter for a final hearing on Petitioner's applications for relief from removal." (*Id.* at 7). On February 14, 2025, Petitioner was represented by counsel at his final hearing. (*Id.*). "After the completion of testimony, the immigration judge denied all of Petitioner's applications for relief from removal and ordered Petitioner removed from the United States to Russia." (*Id.*; see *id.* 20-23).

Petitioner appealed the final order of removal to the Board of Immigration Appeals ("BIA") on March 13, 2025. (*Id.* at 7). On July 25, 2025, the BIA upheld the denial of Petitioner's applications for relief and dismissed his appeal. (*Id.* at 27-30). On August 20, 2025, Petitioner, represented by counsel, filed a petition for review with the Ninth Circuit Court of Appeals, which remains pending as of the date of this order. *Chub*, No. 25-5282, DktEntry: 1 (9th Cir. filed Aug. 20, 2025).

On October 6, 2025, Petitioner filed the underlying petitioner writ of habeas corpus, alleging his detention has been prolonged and requesting a bond hearing "before a neutral decisionmaker to determine whether their prolonged detention is justified based on danger or flight risk." (Doc. 1 at 5, 17). Respondents filed their response brief to the habeas petition on December 1, 2025. (Doc. at 9). On December 11, 2025, Petitioner filed an emergency motion with the Ninth Circuit to stay his removal pending the outcome of his petition for review. *Chub*, No. 25-5282 at DktEntry: 11, 12. The next day, the Ninth Circuit issued a temporary stay of removal under the Ninth Circuit Court of Appeals General Order 6.4. *Id.* at DktEntry: 13. Petitioner then filed his traverse in the underlying habeas proceedings on January 9, 2026. (Doc. 14).

## II. APPLICABLE LAW AND ANALYSIS

As an initial matter, the Court found in its preliminary screening order that it has jurisdiction over Petitioner's habeas claim of unlawful detention without a bond hearing, pursuant to 28 U.S.C. § 2241. (Doc. 4 at 1-2). In their opposing brief, Respondents do not challenge the Court's jurisdiction over this petition. (Doc. 9). Thus, the Court turns to the merits of the petition.

### A. Parties' Contentions

Petitioner requests the Court to issue a writ of habeas corpus, to hold a bond hearing, and to determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a danger or risk of flight. (Doc. 1 at 17). Alternatively, Petitioner requests an order releasing him within 30 days unless Respondents schedule a bond hearing before an immigration judge in which the government must establish by clear and convincing evidence that Petitioner presents a current risk of flight risk or danger to continue detaining him. (*Id.*). Petitioner further seeks a declaration from the Court that his ongoing detention violates the Due Process Clause of the Fifth Amendment and an award for his costs. (*Id.*).

Petitioner argues that "[d]etention without a bond hearing is unconstitutional when it exceeds six months." (*Id.* at 8). Absent a bright-line six-month standard, Petitioner argues that his detention has become prolonged and procedural due process entitles him to release unless Respondents provide him with a prompt bond hearing under the three-factor test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (*Id.* at 10-12). Because the Ninth Circuit issued a temporary stay of removal, Petitioner further argues that the stay "introduces legal uncertainty as to when, if at all, removal may proceed" and continued detention "without meaningful review becomes excessive and inconsistent with due process principles." (Doc. 14 at 2-3).

In their response brief, Respondents challenge Petitioner's argument that his detention has been "prolonged." (Doc. 9 at 3). Respondents urge the Court to deny the petition because Petitioner had been detained for just 18 months at the time of filing his petition and "for approximately four months since his order of removal became final on July 25, 2025." (*Id.* at 4). Respondents argue that "[b]ecause his post-order of removal detention has not exceeded six months, that period of detention is 'presumptively reasonable.'" (*Id.* (*citing Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)). Respondents further argue that, even if Petitioner's detention exceeds six months, Petitioner has the burden to show that there is no significant likelihood of removal in the reasonably foreseeable future because Petitioner has not shown that Russia will not accept him or that any United States law bars Petitioner's removal. (*Id.*).

4

At the time Respondents filed their response brief, Petitioner had not yet filed his motion for an emergency stay or been granted a temporary stay. *Chub*, No. 25-5282 at DktEntry: 11, 12, 13. As such, Respondents have not presented arguments as to the impact of the stay on Petitioner's right to a bond hearing.

**B.  Mandatory Detention under 8 U.S.C. § 1225(b)**

Section 1225 governs the detention of noncitizens seeking admission into the United States. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The Supreme Court made clear in *Jennings* that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id.* at 302; *see id.* at 300 ("[§§ 1225(b)(1) and (b)(2)] unequivocally mandate that aliens falling within their scope 'shall' be detained.") (*quoting Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171 (2016)). Moreover, "§ 1225(b)…do[es] not give detained aliens the right to periodic bond hearings during the course of their detention." *Id.* at 282

In *Department of Homeland Security v. Thuraissigiam*, the Supreme Court explained that "'[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival…)' is deemed 'an applicant for admission.'" 591 U.S. 103, 109 (2020) (*quoting* 8 U.S.C. § 1225(a)(1)). "An applicant is subject to expedited removal if, as relevant here, the applicant… is among those whom the Secretary of Homeland Security has designated for expedited removal." *Id.* (*citing* §§ 1225(b)(1)(A)(i), (iii)(I)-(II)). The Court in *Thuraissigiam* observed that the "century old rule regarding the due process rights of an alien seeking initial entry… rests on fundamental propositions: '[T]he power to admit or exclude aliens is a sovereign prerogative'[;] … the Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit[;] … and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted[.]" *Id.* at 139 (internal citations omitted). "[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (citation omitted); *see id.* at 140 ("[A]n alien who is

detained shortly after unlawful entry cannot be said to have 'effected an entry.'" (citation omitted)).

Here, Petitioner entered the United States without inspection on April 10, 2024, and was mandatorily detained by DHS and processed for expedited removal under § 1225(b).  (Doc. 9 at 6). "[A]n alien in [Petitioner's] position has only those rights regarding admission that Congress has provided by statute…Congress provided the right to a 'determin[ation]' whether he had 'a significant possibility' of establish[ing] eligibility for asylum,' and he was given that right.  Because the Due Process Clause provides nothing more, it does not require a review of that determination or how it was made." *Thuraissigiam*, 591 U.S. at 140 (*citing* §§ 1225(b)(1)(B)(ii), (v)).

### C.  Judicial Stay of Removal and Detention

"When an alien files a petition for review of an administratively final order of removal, [the Ninth Circuit] [has] the authority to enter a judicial stay of removal." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008) (*citing* 8 U.S.C. § 1252(b)(3)(B)). Once the Ninth Circuit issues its stay of removal, to determine whether Congress has authorized continued detention, a court must first identify the statutory provision that confers such authority on the Attorney General. *Id.* at 1057.

In *Prieto-Romero*, petitioner was a native and citizen of Mexico, and after receiving a notice to appear, he was initially detained under § 1226(a) pending removal proceedings. *Id.* at 1056, 1058. The petitioner had several bond hearings but remained in custody. *Id.* at 1056. An immigration judge found petitioner removable because he had been convicted of an aggravated felony. *Id.* The petitioner appealed the ruling to the BIA, which affirmed the removal order. *Id.*

Like Petitioner here, Prieto-Romero filed a petition for review with the Ninth Circuit, which ordered a stay of removal pending consideration of his petition for review. *Id.* at 1056. Thereafter, the petitioner filed a petition for a writ of habeas corpus, arguing that his three-year detention was prolonged and violated substantive and procedural due process. *Id.* at 1057.

The Ninth Circuit held that the Attorney General was authorized to initially detain petitioner under 8 U.S.C. § 1226(a) and remained statutorily authorized to detain him under this same statutory provision. *Id*. at 1057. While the Ninth Circuit agreed that his "more than three-year detention certainly qualifies as prolonged by any measure," the court concluded that petitioner's

6

detention was not "indefinite" and that he faced a "significant likelihood of removal in the reasonably foreseeable future because the government can repatriate him to Mexico if his pending bid for judicial relief from his administratively final removal order proves unsuccessful." *Id*. at 1062. The court found no evidence that petitioner was "unremovable because the destination country will not accept him or his removal is barred by [United States'] laws." *Id*. at 1063. Because the petitioner remained "*capable* of being removed – even if it has not yet finally been determined that he *should be* removed…the government retains an interest in "'assuring [his] presence at removal.'" *Id*. at 1065 [emphasis in text] (*quoting Zadvydas*, 533 U.S. at 699). Therefore, the Ninth Circuit concluded that, during the stay of removal, petitioner's three-year detention remained statutorily authorized under § 1226(a), the initial statutory scheme applied to his case. *Id*. at 1062.

Likewise, here, during removal proceedings, Petitioner was mandatorily detained under § 1225(b). He has not presented evidence, or even argued, that the government is not able to repatriate him to Russia if his pending bid for judicial relief from an administratively final removal order proves unsuccessful. There is no evidence that Petitioner is unremovable because Russia will not accept him or his removal is barred by the laws of the United States. *Id*. at 1063. While Petitioner's detention may be lengthy, it is not indefinite. As such, Petitioner faces a significant likelihood of removal in the reasonably foreseeable future, and § 1225(b) statutorily authorizes the Attorney General to mandatorily detain Petitioner while pursuing judicial review. *Id.* at 1057, 1062.

The Court now turns to Petitioner's argument that his continued detention without a bond hearing violates his procedural due process rights.

### D. Due Process under the Fifth Amendment

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (*citing* U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id*. (*citing United States v. Salerno*, 481 U.S. 739, 746 (1987)). "As the Supreme Court recognized, there is little question that the civil detention of aliens during removal

7

proceedings can serve a legitimate government purpose, which is 'preventing deportable ... aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed.'" *Prieto-Romero*, 534 F.3d at 1065 (*quoting Demore v. Kim*, 538 U.S. 510, 528 (2003)). "[D]ue process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (*quoting Zadvydas*, 533 U.S. at 690–91 (internal quotation marks omitted)). "There is an important difference between whether detention is statutorily authorized and whether it has been adequately determined to be necessary as to any particular person." *Id.*

### 1.    Detention Exceeding Six Months Is Not Per Se Unconstitutional

Petitioner argues that "[d]etention without a bond hearing is unconstitutional when it exceeds six months." (Doc. 1 at 8). However, the Supreme Court in *Jennings* specifically rejected this argument. *Jennings,* 583 U.S. at 303-04 (analyzing §1226(c) in conjunction with §1226(a)); *see Zadvydas*, 533 U.S. at 701 ("alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future").

### 2.    Procedural Due Process

Petitioner next argues that "even absent a bright-line six-month standard, an individualized bond hearing is required when detention becomes unreasonably prolonged." (Doc. 1 at 9 (capitalization omitted)). While § 1225 may statutorily authorize continued detention, the Court must still analyze Petitioner's due process challenge "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)); *see R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025).

///

###### i.    *Liberty interest*

The Court first considers whether Petitioner has a protected liberty interest under the Due Process Clause. Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *Young v. Harper*, 520 U.S. 143, 147–49 (1997) (due process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). "A protected liberty interest may arise from a conditional release from physical restraint," such as where a noncitizen is arrested but released on supervision pending removal proceedings.  *Jose B.M. v. Murray, et al.*, No. 1:25-cv-01584-KES-CDB, 2026 WL 19121, at *4 (E.D. Cal. Jan. 4, 2026) (*citing Young*, 520 U.S. at 147–49); *see, e.g. Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *12 (D. Ariz. Aug. 11, 2025) (same), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025).

"There is also a meaningful distinction between a challenge to an initial period of detention, at issue in *Demore*, and a challenge to *re-detention* after a court has previously granted release on bond pending immigration proceedings." *Carballo v. Andrews, et. al*, No. 1:25-cv-00978-KES-EPG, at *7 (E.D. Cal. Aug. 15, 2025). "'[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person.'" *Id.* (*quoting Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025)). For example, "[i]n the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity 'to form the [] enduring attachments of normal life.'" *Id.* (*quoting Morrissey*, 408 U.S. at 482).

Here, if Petitioner had been released from custody following his initial detention at the San Ysidro Port of Entry and, sometime later, been re-detained by ICE pending removal proceedings, Petitioner could argue he has a liberty interest in release and could be entitled to a bond hearing. But that is not the case here. At the time of his entry, Petitioner had been living outside of the United

States and was detained at the port of entry. ICE considered Petitioner for parole from detention after filing his asylum application, but determined that Petitioner did not establish that he was not a flight risk and that a bond or other parole condition would ensure his appearance at required immigration hearings. (Doc. 14 at 17-18). Thus, Petitioner was not released into the United States on parole or supervision.

Accordingly, Petitioner has been continuously detained and does not have a protected liberty interest in his release. Thus, due process does not require a bond hearing. Nevertheless, Petitioner argues that he has a general liberty interest in being free from detention because "'[f]reedom from imprisonment…lies at the heart of the liberty [the Due Process Clause] protects.'" (Doc. 1 at 11 (*quoting Zadvydas*, 533 U.S. at 690)). He also argues that he "is being held in 'incarceration-like conditions'" and "has an overwhelming interest … regardless of the length of his immigration detention, because 'any length of detention implicates the same' fundamental rights." (*Id.* (citation omitted)). Even if the Court were to find a general liberty interest here in being free from restraint, which it does not, the Court would deny the habeas petition for the reasons described below.

> ii.   *Procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution*

Were the Court to find that Petitioner's continuous detention implicated a protectible liberty interest, the Court next would determine what process, if any, is due. "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez v. Sessions*, 872 F.3d 976, 990 (2017) (*quoting Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). "A survey of decisions across the Circuits, and among the district courts within the Ninth Circuit, reveals a myriad of overlapping balancing tests applied to determine whether a petitioner's due process rights under the Fifth Amendment were violated when they were not afforded a bond hearing while detained under § 1226(c)." *Keo v. Warden of Mesa Verde ICE Processing*, No. 1:24-cv-00919-

HBK, 2025 WL 1029392, *5 (E.D. Cal., Apr. 7, 2025), *appeal dismissed sub nom. Keo v. Warden*, No. 25-3546, 2025 WL 2528945 (9th Cir. June 27, 2025) (summary of various balancing tests).

Petitioner argues that this Court should apply the balancing test set forth by the Supreme Court in *Mathews v. Eldridge*. (Doc. 1 at 9). Respondents make no argument as to balancing party interests to resolve a due process challenge.

The Court acknowledges that the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of *Mathews. See, e.g., Demore*, 538 U.S. at 523, 526–29; *cf. Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims."). However, the Ninth Circuit has noted that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (noting that many courts have applied the *Mathews* test in considering due process challenges in the immigration context).

A significant number of district courts in the Ninth Circuit have employed the *Mathews* test where a noncitizen arrested by immigration authorities is released, only to be re-arrested following a substantial passage of time, in evaluating whether due process entitles a petitioner to a bond hearing. *See, e.g., Doe v. Becerra,* 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). Here, had Petitioner persuasively demonstrated that his continued detention implicates a protectible liberty interest, Petitioner's due process allegation would be sufficiently analogous such that the Court would find the *Mathews* test appropriate. *See e.g. Romero-Romero v. Wofford*, No. 1:24-CV-00944-SKO (HC), 2025 WL 391861, at *4-5 (E.D. Cal. Feb. 4, 2025), *report and recommendation adopted as modified*, 2025 WL 3154399 (E.D. Cal. Nov. 12, 2025) (applying *Mathews* to questions of due process for petitioner in mandatory detention under § 1226(c)). However, out of an abundance of caution, the Court will apply the *Mathews* factors to Petitioner's due process challenge.

The Supreme Court in *Mathews* identified three factors bearing on the constitutional need for procedural protections: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 334-35.

i.    *Petitioner's Private Interest*

The first *Mathews* factor is Petitioner's private liberty interest. As the Court noted above, Petitioner has not established a protected liberty interest. Analyzing *Mathews* further, this factor still does not weigh in Petitioner's favor.

In *Rodriguez Diaz*, the Ninth Circuit considered the discretionary detention outlined in § 1226(a) and assumed that petitioner's detention qualified as "prolonged" in a "general sense" since he was detained for 14 months following his first bond hearing. *Rodriguez Diaz*, 53 F.4th at 1207. The Ninth Circuit "held, more generally, that an individual's private interest in freedom from prolonged detention is unquestionably substantial." *Id.* (internal quotations omitted).

Here, Petitioner has been detained continuously for 21 months. Respondents argue that under 8 U.S.C. § 1231(a), this Court should evaluate Petitioner's length of detention beginning July 25, 2025, when the removal order became final. (Doc. 9 at 3-4). However, this argument does not consider the subsequent stay of removal issued by the Ninth Circuit. In *Prieto-Romero*, the Ninth Circuit rejected the continued application of § 1231 as statutory authority to detain while a judicial stay is pending. *Prieto-Romero*, 534 F.3d at 1058-59. Instead, after the judicial stay of removal was issued, the Ninth Circuit evaluated petitioner's length of detention from his first day in custody. *Id.* at 1056. The Court will do likewise.

The Ninth Circuit has also cautioned that "it is important not to overstate the strength of [petitioner's] showing under the first *Mathews* factor, either." *Rodriguez Diaz*, 53 F.4th at 1207. As in *Rodriguez Diaz*, the Court cannot overlook that most of the period of Petitioner's detention arose from the fact that he requested various continuances of scheduled hearings. *See Demore*, 538

12

U.S. at 531 n.14 ("'[T]he legal system is replete with situations requiring the making of difficult judgments as to which course to follow,' and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices.") (*quoting McGautha v. California*, 402 U.S. 183, 213 (1971)); *see also Prieto-Romero*, 534 F.3d at 1063–65 & n.9 (holding that a noncitizen's detention was not unconstitutionally indefinite when it was prolonged by a challenge to his removal order, and distinguishing a case in which the government made an "unusual move" that delayed resolution) (quotations omitted). Here, Petitioner, represented by counsel, appeared for at least six hearings before the immigration judge, appealed his order of removal to the BIA, and filed a petition for review with the Ninth Circuit.

In short, in evaluating Petitioner's interests under the first prong of the *Mathews* analysis, the Court "cannot simply count his months of detention and leave it at that." *Rodriguez Diaz*, 53 F.4th at 1208. The Court "must also consider the process he received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge" his removal proceedings. *Id.* Thus, it is significant that the Petitioner is not without process during his detention. *Id.* at 1207. Furthermore, this is not a case where detention is indefinite since the government is able to repatriate him to Russia.

As such, the first *Mathews* factor does not weigh in Petitioner's favor.

### ii.    Risk of an Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of Petitioner's interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The Ninth Circuit recently observed that "after the Supreme Court's decisions in *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," including § 1225(b). *Rodriguez Diaz*, 53 F.4th at 1201 (emphasis in original); *see id.* at 1214 (Bumatay, concurring) ("so long as the government follows reasonable, individualized determinations to ensure that the alien is properly in removal proceedings, due process does not require more bond hearings even after a prolonged period."). As described above, while Petitioner

is subject to mandatory detention under § 1225(b), ICE still considered parole. Petitioner then received at least six hearings, an appeal, and the Ninth Circuit is considering his petition for review. This second factor weighs in favor of the Respondents.

Petitioner asserts that his individualized medical circumstances warrant release from custody and alternative means of supervision. (Doc. 1 at 6). Petitioner argues that his "vision deteriorated to the point where [he] need[s] to wear glasses" but does not allege that he has no access to glasses. (*Id.*). He also alleges generally that he is "unable to follow doctors' recommendations" related to his previous hip replacements. (*Id.*).

Petitioner's medical arguments address the conditions of his confinement and cannot be raised in a habeas petition. Instead, he must pursue a §1983 civil rights action or pursue other remedies, such as a claim under the Federal Tort Claims Act. *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (habeas corpus proceedings proper mechanism for prisoner to challenge "legality or duration" of confinement but a civil rights action is proper method of challenging "conditions of confinement) (*citing Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

Accordingly, the second *Mathews* factor weighs in favor of Respondents.

###### iii.    Government's Interest

As the Supreme Court has recognized, there is little question that the civil detention of noncitizens during removal proceedings can serve a legitimate government purpose, which is "preventing deportable ... aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Prieto-Romero*, 534 F.3d at 1065 (*quoting Demore,* 538 U.S. at 528). Regarding the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. In *Rodriguez Diaz*, the Ninth Circuit noted the government's strong interest in enforcing our nation's immigration laws. *Rodriguez Diaz*, 53 F.4th at 1208; s*ee Romero-Romero*, 2025 WL 3154399, at *1 (noting in a similar habeas case brought by a petitioner detained pursuant to § 1226(c) that "the case presents compelling regulatory goals in relation to detention including protection of the public

14

and successful removal if ordered"). For the same reasons, this Court concludes that the government's interests are significant.

Petitioner has not been released from immigration custody since his arrest at the port of entry and has no liberty interest entitling him to a hearing at this time. Even if the Court were to go further in its analysis, the *Mathews* factors also weigh in favor of Respondents, confirming that there is no due process violation in Petitioner's continued detention under § 1225(b) without a bond hearing at this time. *See Romero-Romero*, 2025 WL 391861, at *9 ("Should circumstances change and continued detention appear to be indefinite in nature, due process may require a different outcome."). Accordingly, the Court denies the petition for a writ of habeas corpus.[3]

### E.  Respondents' Motions to Strike and Dismiss Unlawfully Named Officials

In a footnote to their habeas response, Respondents "move to strike and to dismiss all unlawfully named officials under § 2241." (Doc. 9 at 1 n.1). Since the Court denies the petition for habeas corpus, the motions to strike and dismiss are moot.

### III. <u>CONCLUSION AND ORDER</u>

Accordingly, IT IS HEREBY ORDERED that:

1) The petition for writ of habeas corpus (Doc. 1) is DISMISSED; and

2) The Clerk of Court is DIRECTED to enter judgment and close the case.

IT IS SO ORDERED.

Dated:   **January 26, 2026**   _____
UNITED STATES MAGISTRATE JUDGE

---

[3] Because due process here does not require a bond hearing, the Court declines to consider Petitioner's argument as to what burden of proof the immigration judge should use at a bond hearing under § 1225(b). (Doc. 1 at 13-15).